**Joyce Ann BEAUFORD, Appellant,**

v.

**FATHER FLANAGAN'S BOYS' HOME, Appellee.**

**Joyce Ann BEAUFORD, Appellee,**

v.

**FATHER FLANAGAN'S BOYS' HOME, Appellant.**

Nos. 87–1064, 87–1065.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1987.

Decided Oct. 19, 1987.

C. Jan Headley, Omaha, Neb., for appellant.

Joseph C. Byam, Omaha, Neb., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and LARSON,* Senior District Judge.

HEANEY, Circuit Judge.

## I. OVERVIEW

This appeal presents the question of whether Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination in the handling of an employee salary continuation program and employee health and dental benefits when the handicapped employee is no longer able to perform the essential functions of his or her job. We find that it does not.

## II. BACKGROUND

Joyce Ann Beauford, a black female, was employed as a classroom teacher at Wegner Middle School on the campus of Boys Town, Inc., a non-profit corporation providing a variety of services for disadvantaged youths located in Boys Town, Nebraska. During the first five years of Beauford's employment (1974–79), her teaching experience was without incident. During this period, she received positive evaluations and had no major problems with fellow staff members. Things changed for Beauford however in 1979 when Boys Town hired Donald Black as its new Director of Education. Black instituted a new instructional method called "precision teaching." In simplest terms, precision teaching is a system designed to allow students to learn at their own pace. Implementing the precision teaching system requires special training for teachers in order to effect a fairly comprehensive reorientation in teaching techniques. The process is accompanied by myriad forms that the teachers have to fill out with great specificity. The record shows that many of the teachers experienced difficulty adjusting to precision teaching, none however as great as the difficulty experienced by Joyce Beauford.

After several incidents in which Beauford was cited for not complying with the requirements of the precision teaching curriculum, Beauford's problems accelerated when in March of 1981 she was brought in for a special "second evaluation" of her teaching performance. Shortly, thereafter Beauford was hospitalized for various physical and emotional ailments which, she alleges, arose out of "pressures from the school." During her hospitalization, Boys Town began the process of terminating Beauford. This termination took effect on June 5, 1981.

In response, Beauford filed a grievance under the arbitration provision in her employment contract with Boys Town. In March of 1982, the arbitrator reinstated Beauford, finding that Boys Town's letter

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

of termination was received after the deadline specified in the contract and thus was procedurally improper. Moreover, although her performance might have conceivably justified a properly handled termination, the arbitrator found that it did not justify "immediate discharge." Following this decision, Beauford informed Boys Town that she was unable to work because of mental and physical problems and that she would be unable to work in the foreseeable future. Beauford apparently remains an employee of Boys Town to this day.

Beauford had applied for the various disability and health benefits that were available to employees of Boys Town. There were three programs for which Beauford was potentially eligible: (1) disability insurance through Union Mutual Insurance Company; (2) "a salary continuation program" which provided injured or disabled employees with salary benefits on a temporary basis when they became disabled; and (3) health and dental benefits through a program of self-insurance, administered by Banker's Life, Inc. Under the provisions of the third program, employees were entitled to continuous coverage (i.e. long term health insurance benefits) should they become disabled.

Beauford received the full benefit of the disability insurance. However, her applications for the second and third benefits were denied. There is conflicting evidence concerning why Beauford did not receive these benefits. Boys Town maintains that Beauford was denied salary continuation and health insurance because she would not submit to a required physical examination. Beauford maintains that the required medical examination was merely a pretext, and she was denied these benefits because of discrimination based both on race and handicap.

Thereafter, Beauford began a suit in the District Court of Douglas County, Nebraska "for payment of medical expenses accruing after September 1, 1981." This action was stayed when Beauford commenced a suit in Federal District Court in Omaha, alleging violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1982) (prohibiting racial discrimination in the handling of private employment contracts) and the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (prohibiting discrimination against otherwise qualified handicapped individuals by recipients of federal financial aid).

The federal district court found Beauford had presented insufficient evidence to establish a prima facie case under 42 U.S.C. § 1981 and dismissed her race discrimination claim. It dismissed the claim based on the Rehabilitation Act, finding that such claim was not covered by the statute. On appeal, Beauford has dropped her claim based on racial discrimination and concentrates her arguments on the question of whether there is coverage of her claim under the Rehabilitation Act.

## III. THE DISTRICT COURT'S ANALYSIS

The district court found that Boys Town is a recipient of federal funding under the regulatory requirements set forth by the Department of Health and Human Services. Second, it held that Beauford met the definition of a handicapped individual under the pertinent federal regulation. *See* 45 C.F.R. § 84.3(j) (1986). Third, it determined that the Rehabilitation Act's statutory protection reached fringe benefits available by virtue of employment. *See* 45 C.F.R. § 84.11(b)(6).

The district court however found that these benefits were only protected so long as Beauford was able to perform her job at Boys Town. First, the court noted that the statutory language of the Rehabilitation Act extended protection only to "otherwise qualified handicapped individual[s]." *See* 29 U.S.C. § 794.[1] The court went on to define the term "otherwise qualified handicapped individual," as "one who can do his

---

**1.** The statute in relevant part provides:
No otherwise qualified handicapped individual in the United States * * * shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *.
29 U.S.C. § 794.

or her job in spite of their handicap, rather than those who could do the job but for their handicap." *See Cook v. United States Dep't of Labor,* 688 F.2d 669, 670 (9th Cir.1982) *cert. denied,* 464 U.S. 832, 104 S.Ct. 112, 78 L.Ed.2d 113 (1983). Given the fact that Beauford admitted she was no longer able to perform her job, the court found that her claim was not protected by the Rehabilitation Act.

## IV. COVERAGE UNDER THE REHABILITATION ACT

The clear language of section 504 of the Rehabilitation Act extends its coverage only to *"otherwise qualified handicapped individuals."* 29 U.S.C. § 794 (emphasis added). The Supreme Court has interpreted "otherwise qualified handicapped individual" as "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Thus both the language of the statute and its interpretation by the Supreme Court indicate that section 504 was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection of section 504.

Moreover, the relevant HHS regulations (45 C.F.R. § 84.3(k)) clearly support this interpretation. While delegation of interpretive authority does not free courts from their responsibilities to say what the law is and to determine whether the regulation in question is consistent with the law, *see Moore v. Harris,* 623 F.2d 908, 918–19 (4th Cir.1980), this Court owes some deference to these regulations.

Specifically, the HHS regulations provide:

"Qualified handicapped person" means:

(1) With respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question;

(2) With respect to public preschool, elementary, secondary, or adult educational services, a handicapped person (i) of an age during which nonhandicapped persons are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act; and

(3) With respect to post-secondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's educational program or activity;

(4) With respect to other services, a handicapped person who meets the essential eligibility requirements for the receipt of such services.

45 C.F.R. § 84.3(k).

Subheading (1) "employment" is the category correctly governing Beauford's claim. "With respect to employment," the federal regulations define a handicapped individual as one "who, with reasonable accommodation, can perform *the essential functions of the job in question.*" 45 C.F.R. § 84.-3(k)(1) (emphasis added).

Beauford admits that she cannot perform the essential functions of the job in question and further states that she will be unable to do so in the near future. Therefore, she does not meet the prerequisites to be protected under this provision.

Beauford, on the other hand, relies *incorrectly* on subheading (4), the "other services" clause of the HHS regulation. *See* 45 C.F.R. § 84.3(k)(4). Under this provision, the regulation provides that "[w]ith respect to other services," a qualified handicapped person is: "a handicapped person who meets the essential eligibility requirements for the receipt of such service." Beauford argues that health insurance is an "other service," and that she, being a disabled employee, meets the "essential eli-

gibility requirement for the receipt of such service."

This language read in isolation might provide some support for such a conclusion. However, as discussed above, the statutory language extends its protection only to the ambit of a potentially functional employment relationship. Second, and perhaps more significantly, it is clear that when the structure of the regulation is examined, the "other services" clause is simply not applicable to Beauford's claim.

As discussed above, the regulatory definition of otherwise qualified handicapped individual under 45 C.F.R. § 84.4(k) is divided into four headings: (1) employment (2) public preschool, elementary, secondary or adult education, (3) post-secondary and vocational educational services and (4) other services.

Viewing the regulation as a whole, we find that each of these initial subheadings corresponds with a more complete supplementary "subpart" of the regulation. For example, the "employment" subheading corresponds with "Subpart B—Employment Practices," see 45 C.F.R. § 84.11, which defines in more thorough terms the scope of the regulation with respect to the employment relationship.[2] Following from this general pattern, we find that subheading (4) the "other services" clause relied on by Beauford corresponds with "Subpart F—Health, Welfare and Social Services." See 45 C.F.R. § 84.51.

Subpart F clearly shows that the "other services" clause does not apply to discrimination in the handling of employee benefits but rather to the wholly unrelated topic of discrimination by health, welfare and social services providers toward applicants trying to obtain these types of services.

Specifically Subpart F delineates the term "other services" in the following language:

Subpart F applies to health, welfare, and other social service programs and activities that receive or benefit from federal financial assistance and to recipients that operate, or that receive or benefit from Federal financial assistance for the operation of, such programs or activities.

45 C.F.R. § 84.51.

The regulation goes on to list the types of discrimination prohibited under this subpart. In reading these prohibitions, it is apparent that this subpart is concerned not with the discriminatory handling of benefits due a recipient's employees, but rather with prohibiting discrimination by certain recipients who provide certain types of health, welfare and social services toward applicants applying for these services.[3]

Under this provision a claim would accrue when a patient or other applicant who was otherwise eligible for receipt of these health, welfare or other social services was denied treatment or access because of handicap. In the present case, it is not entirely clear that Boys Town would be one of these health, welfare or other social service providers. Yet, even if it were, the protection of this subpart would extend not to Joyce Beauford, but rather to the potential recipient of the service Boys Town provided—in this case the disadvantaged youths cared for at the facility.

2. The subheading having to do with preschool, elementary and secondary education corresponds to "Subpart—D Preschool, Elementary and Secondary Education," 45 C.F.R. § 84.31, and third subheading to "Subpart E, Post Secondary Education," 45 C.F.R. § 84.41.

3. See generally 45 C.F.R. § 84.51(a) which provides:

General. In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap:

(1) Deny a qualified handicapped person these benefits or services;

(2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons;

(3) Provide a qualified handicapped person with benefits or services that are not as effective as the benefits or services provided to others;

(4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons; or

(5) Provide different or separate benefits or services to handicapped persons except where necessary to provide qualified handicapped persons with benefits and services that are as effective as those provided to others.

## V. CONCLUSION

Discrimination in the handling of salary continuation and health and dental benefits due handicapped employees unable to perform the essential functions of their jobs is an undesirable thing. However, in the end, protection from such discrimination is simply not contemplated under Section 504 of the Rehabilitation Act. This decision does not end the matter however. As noted above, a parallel action was stayed in state court pending the disposition of this action. Thus, Beauford can still pursue her claim that Boys Town violated its contract of employment with her by failing to provide her with salary continuation and health and dental benefits. Beauford's suit under the Rehabilitation act is therefore dismissed from federal court without prejudice to the state law contract action presently stayed in Nebraska district court.

Affirmed.