Walter L. MARKS, Plaintiff,

v.

The SCHOOL DISTRICT OF KANSAS CITY, MISSOURI, Defendant.

No. 95–0980–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

Aug. 19, 1996.

Brian Niceswanger, Robert Pete Smith, McDowell, Rice, Smith & Gaar, Kansas City, MO, for plaintiff.

William H. Sanders, Sr., Brock Shealy, Allan V. Hallquist, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Michael Waldeck, Niewald, Waldeck & Brown, Kansas City, MO, for defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before this Court are defendant The School District of Kansas City, Missouri's Motion for Summary Judgment, plaintiff's Opposition, and defendant's Reply. For the reasons stated below, defendant's motion is granted in part and denied in part.

### I. *Background*

In this lawsuit, plaintiff Walter Marks ("plaintiff" or "Marks") asserts five claims for liability against defendant The School District of Kansas City, Missouri ("defendant" or "the District"). Counts I through III allege the District violated Marks' rights under the Americans with Disabilities Act of 1990 ("ADA"), the Missouri Human Rights Act ("MHRA"), and the Family and Medical Leave Act of 1993 ("FMLA"). Count IV alleges infliction of emotional distress by the District. Finally, in Count V, Marks contends that the District breached his employment contract when the School Board fired him on April 27, 1995.

Defendant requests that this Court grant it summary judgment on all five counts, arguing that Marks cannot make a prima facie case under the ADA, MHRA, or FMLA, or for infliction of emotional distress. Defendant further asserts in its summary judgment motion—as it did in its counter-claim—that Marks cannot succeed on his breach of contract claim because he materially breached his employment contract and, as a result, his termination was justified.

### A. *Undisputed Facts*

Plaintiff was hired by defendant to be the City's Superintendent of Schools in 1991. In 1993, the District extended Marks' employment by a written contract entitled the "Superintendent's Contract." Def.'s Ex. A. Under the Superintendent's Contract, Marks' would be employed with the District through May 24, 1996, and the contract would be automatically extended for an additional year unless the School Board notified Marks that his contract would not be renewed by February 1, 1995. Def.'s Ex. A, ¶ 1. In 1994, however, Marks asked the School Board not to renew his contract at the expiration of its term in May 1996, stating that he planned to retire from the District as early as November 1995. Def.'s Ex. B. With the leave time Marks would have accumulated, he contemplated that he could have retired in November or December 1995 and taken leave through the expiration of his contract. Pla.'s Ex. 9, ¶ 6.

Under the Superintendent's Contract, the School Board had the right to terminate Marks for engaging in conduct which was "seriously prejudicial to the School district including, but not limited to, neglect of duty or intentional or material breach of contract." Def.'s Ex. A, ¶ 14(d). The superintendent's job description reads as follows:

The Superintendent, while formally reporting to the Board, must demonstrate sensitivity and build positive relationships with all constituencies the district serves: pupils, parents, community leaders, employees and their designated representatives and the local business community, to build and lead a consensus of this multi-cultured, multi-ethnic community on the solutions to the issues facing the school district.

Def.'s Ex. D. The Superintendent's job description also states he must:

Ensure positive community support of, and involvement in, the school district by providing high profile articulate public leadership in the form of the speaking engagements, forums and informal sessions with the media, parents, employees and community leaders.

Def.'s Ex. D.

Marks admitted in his deposition that, as a part of his job responsibilities, he was to be frank, honest and forthright with the School

Board about any serious health problems that impacted his job. Marks depo., p. 9:6–10, Def.'s Ex. E.

Marks became disabled due to a Depression Disorder in late 1994 and early 1995. Pla.'s Ex. 1, ¶ 6. On December 21, 1994, Marks informed the District of his need for time off and advised the Board he needed time off for six to eight weeks for health reasons. Pla.'s Ex. 11 and Def.'s Ex. E, Marks' depo., p. 10:23–25, p. 11:1–14.

After Marks began his leave of absence, the School Board asked for verification of his health problems. Marks requested that his personal family physician in Kansas City, Dr. Michael Ausmus, write a letter to the School Board. Dr. Ausmus wrote to the School Board on January 12, 1995, stating:

> I recommend, because of this chronic back condition, and the added stress secondary to his job, that he [Marks] take a medical leave of absence for probably at least six to eight weeks, and possible longer, to improve both his physical and his emotional well-being.

Def.'s Ex. F. Dr. Ausmus also wrote a letter to Marks' attorney on February 2, 1995, explaining:

> The school board had granted him [Marks] his leave of absence a couple of weeks before but they were now needing a letter to verify the reason for his medical leave. Dr. Marks had originally told him (sic) that it was because of his severe back. I told him that he was not on medical leave for his back, it was for his stress, and I at no time put him on any restrictions regarding his back. He has never been on any due to the condition of his back.

Def.'s Ex. C, p. 4. Then, on February 13, 1995, Dr. Ausmus and Dr. Mignone (a psychiatrist who treated Marks in Florida where he was on leave) signed Department of Labor forms pursuant to the FMLA which cited that Marks suffered from "agitated stress anxiety" and "major depression." Def.'s Ex. G.

On February 17, 1995, the District notified Marks that it had retained a psychiatrist of its choosing, Dr. John D. Pro, to examine him and provide a second opinion on the necessity for leave. Pla.'s Ex. 4. Dr. Pro evaluated Marks' medical records and traveled to Florida to examine Marks. Pla.'s Ex. 5.

In early March 1995, Marks began receiving disability benefits [1] from Lincoln National Life Insurance Co. ("Lincoln National"), under a policy issued to Marks from the District. Def.'s Ex. I.[2] In order to collect disability benefits each month, Marks and his doctor were required to submit forms to Lincoln National which included a monthly Supplementary Proof of Loss form with Attending Physician's Statement. Def.'s Ex. E, Marks' depo., p. 188:21–25, p. 189:1 and Def.'s Ex. K. The Supplementary Proof of Loss forms signed by Marks certified that he was "TOTALLY DISABLED and unable to perform all the duties of [his] regular occupation." Marks also wrote that he would return to work "when doctor releases me." Def.'s Ex. K and Def.'s Ex. E, Marks' depo., p. 190–192.

On March 13, 1995, Dr. Pro issued a five-page "Psychiatric Evaluation" to the District and concluded that Marks' "disability and sick leave [was] appropriate and necessary...." Pla.'s Ex. 4. Dr. Pro also determined and informed the School Board that, in his independent medical opinion, Marks would no longer be disabled as of April 1995 and would be able to return to his job with no restriction. Pla.'s Ex. 5, pp. 4–5. Dr. Pro stated that: "[Marks] disability has been justified and his time off has been completely therapeutic and he is capable of returning to work on the target date that he and his psychiatrist have agreed upon." Pla.'s Ex. 5, pp. 4–5.

On March 15, 1995, the School Board passed a resolution stating that "Dr. Marks is to provide the Board (through its attor-

---

1. The disability benefits Marks received were for the period beginning January 27, 1995.

2. In 1995, Marks received a total of $65,085.67 from Lincoln National. Def.'s Ex. J and Def.'s Ex. E, Marks' depo., p. 189:4–13. At the time of Marks' deposition in March 1996, he was still receiving disability benefits from Lincoln National of approximately $7,000 a month. Def.'s Ex. E, Marks' depo., pp. 16–23.

neys) with medical certification of his fitness for duty, at leave two business days prior to the date he is medically released to return to work." Pla.'s Ex. 6.

In late March 1995, both Dr. Mignone and Dr. Ausmus filled out FMLA Return to Work Medical Certification Forms stating that Marks would be able to resume his position as Superintendent on April 17, 1995. Pla.'s Ex. 1, ¶ 8, Ex. 7, Ex. 8, and Ex. 5, pp. 4–5. In early April 1995, Marks met with the School Board and requested that he be allowed to return to this job as superintendent. Pla's Second Amended Complaint, ¶ 39. However, the School Board terminated Marks on April 26, 1995. Def.'s Ex. L.

Dr. Mignone, in an Attending Physician's Statement dated July 28, 1995, certified that Marks was "TOTALLY DISABLED from performing HIS/HER WORK OR BUSINESS" for the time period from November 1994 to "indef." Def.'s Ex. K and Def.'s Ex. E, Marks' depo., pp. 193–194. Marks now represents that he will return to his "gainful occupation" in the "mid summer of 1996" but only if Dr. Mignone certifies that he is ready. Def.'s Ex. E, Marks' depo., pp. 207–208. Marks continues to be under Dr. Mignone's treatment. Pla.'s Ex. 1, ¶ 10.

B. *Disputed Facts*

The parties in this case dispute several material facts. The first main dispute in this case involves the District's contention that Marks had an obligation to inform the School Board of the underlying medical reason for his need for a leave of absence. Marks contends that he had the responsibility to inform the School Board that he had a medical condition for which he needed leave, but did not think that the School board needed to know the details of his medical condition. Pla.'s Ex. 10, Marks' depo., pp. 372:20–25, 373:1–13. Marks asserts that he did not want to give the School Board details of his mental problems because he believed that any health problems reported to the School Board would be made public. Pla.'s Ex. 10, Marks' depo., p. 373:14–24.

The second main dispute consists of Marks' contention that the School Board's actions in terminating his employment with the District, along with extensive media coverage of the firing, Marks once again suffered a severe Major Depression that lasts to the present. Pla.'s Ex. 1, ¶ 9. Dr. Mignone concludes that had Marks been permitted to return to his job as Superintendent on April 17, 1995, he would have been able to perform the duties of his job without restriction. Pla's Ex. 1, ¶ 11. The District, however, disputes that Marks was ever able to perform the duties of his job without restriction, even from the period of April 17, 1995—Marks' medical release date—to April 26, 1995, the date he was fired by the School Board.

The pivotal dispute argued in the motions is whether Marks continually, from March 1995 through the present, represented to Lincoln National that he was completely and totally disabled. Marks states that there was never a representation to Lincoln National, in late March 1995 or early April 1995, that would indicate that Marks' doctors believed that his disability would continue beyond his medical release date of April 17, 1995.

II. *Standard of Review*

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986)). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A plaintiff opposing a properly supported motion for summary judgment may not rest upon the allegations of his pleadings, "but must set forth specific facts showing there is a genuine issue for trial." *Id.*

III. *Discussion*

Defendant contends that it is entitled to summary judgment on all five of plaintiff's claims. Defendant first asserts that plaintiff

cannot maintain a prima facie case under the ADA, MHRA, or FMLA because Marks has continually maintained that he is incapable of performing the job of superintendent. None of these acts, defendant argues, eliminates an employer's right to terminate an employee when he cannot perform the essential elements of his job. Defendant next contends that summary judgment on plaintiff's claim of infliction of emotional distress is appropriate because the District is a governmental entity entitled to sovereign immunity. Finally, defendant argues Marks engaged in conduct which was seriously prejudicial to the District and, as a result, Marks materially breached the terms of his employment contract. Therefore, the School Board had the right to terminate Marks' employment with the District.

## A. Count I: The Americans With Disabilities Act

■ Defendant asserts that plaintiff cannot maintain a prima facie case under the ADA because Marks has continually maintained to Lincoln National that he is incapable of performing his job as superintendent. Therefore, defendant's reasons for terminating plaintiff's employment were legitimate and nondiscriminatory. Plaintiff, however, disputes that he always represented to the District and Lincoln National that he was totally disabled and unable to perform his job duties. From the period of April 17, 1995, through his termination date of April 26, 1995, plaintiff argues that he and his doctors certified that he was willing and capable of resuming his job duties as superintendent. Because the School Board terminated Marks' employment, even in light of his representations, Marks claims that the District violated his rights under the ADA.

■ The ADA mandates that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reason-able accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). "To establish a prima facie case under the ADA, a plaintiff must show that: (1) he was 'disabled' as defined by the ADA; (2) he was qualified, with or without accommodation, to do the job; and (3) his termination amounted to unlawful discrimination based on his disability." McDaniel v. AlliedSignal, Inc., 896 F.Supp. 1482, 1489 (W.D.Mo.1995) (citations omitted).

As a result, in order for plaintiff to prevail under the ADA he must show that he was qualified to perform the essential functions of his job as superintendent. See id. Defendant contends that plaintiff cannot show that he could perform the essential functions of his job—and even if he could, he should not be allowed to—because he has represented to Lincoln National that he is totally disabled for the purposes of obtaining long-term disability benefits.

Defendant relies on Beauford v. Father Flanagan's Boys' Home to support its proposition that Marks should be estopped from arguing to this Court that he is a "qualified individual with a disability" entitled to the protection of the ADA, while concurrently certifying to Lincoln National that he is entitled to long term disability benefits. 831 F.2d 768 (8th Cir.1987).

While the Eighth Circuit has not yet decided the issue of estoppel under the ADA, it has had occasion, in Beauford, to address a similar claim under § 504 of the Rehabilitation Act of 1973, 28 C.F.R. § 35.103(a). Id.[3] In Beauford, the plaintiff admitted to her disability insurer that she could not perform the essential functions of her job and, as a result, the Eighth Circuit held that she was not entitled to receive protection under the Rehabilitation Act. 831 F.2d at 771. The Beauford court stated that "section 504 was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handi-

---

**3.** Because the ADA is an outgrowth of the Rehabilitation Act, decisions interpreting the Rehabili- tation Act are utilized by courts to interpret the ADA.

capped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection of section 504." *Id.*

Defendant additionally cites to *Garcia–Paz v. Swift Textiles, Inc.,* in which a Kansas district court concluded that because the plaintiff had collected disability benefits based on representations that she was totally disabled, she was then estopped from arguing that she could perform the essential duties of her job. 873 F.Supp. 547, 555 (D.Kan.1995). The *Garcia–Paz* court granted the defendant employer's motion for summary judgment, holding that the plaintiff was not a "qualified individual with a disability" protected by the ADA from the date she began receiving her long term disability benefits. *Id.* at 555–56. In arriving at its decision, the *Garcia–Paz* court explained in detail that:

> [p]laintiff, her counsel, and her physician have consistently represented that as of [the date she began receiving disability payments], because of injury or sickness, she has been unable to perform each material duty of her regular occupation. Having collected substantial benefits, based on these unambiguous and seeming informed representations, plaintiff is estopped from now claiming that she *could* perform the essential functions of her position.

*Id.* at 555 (emphasis supplied).

Defendant also points to several other courts outside the Eighth Circuit which have granted summary judgment to the defendant-employer on an estoppel theory. *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581–84 (1st Cir.1992); *Reigel v. Kaiser Foundation Health Plan of N.C.,* 859 F.Supp. 963, 967–70 (E.D.N.C.1994); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280, 1291 (D.Minn.1995).

Plaintiff argues, however, that representations made to Lincoln National on disability claim forms do not operate as an admission that he was unable to perform the essential functions of his job as of the date of his termination. In support of his argument, plaintiff cites the following cases: *Anzalone v. Allstate Ins. Co.,* 1995 W.L. 35613, at *2 (E.D.La. Jan. 30, 1995) (defendant denied

summary judgment because acceptance of disability benefits, without additional representations to the employer, is not enough to trigger estoppel); *Daffron v. McDonnell Douglas Corp.,* 874 S.W.2d 482, 486–88 (Mo. Ct.App.1994) (under Missouri law, even though the plaintiff asserted he was totally disabled in order to receive disability benefits, the plaintiff could still be considered handicapped for purposes of the MHRA); *Smith v. Dovenmuehle Mortgage, Inc.,* 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994) (defendant denied summary judgment because the plaintiff and his doctor explained inconsistency in representations on the fact that the plaintiff had recovered from disabilities).

It is unnecessary, however, for this Court to decide whether the law of this jurisdiction supports defendant's claim that Marks should be estopped from arguing he is entitled to protection under the ADA. In the instant case, it is undisputed that Marks, as well as Dr. Mignone, certified to Lincoln National that he was totally disabled and unable to work for several months starting in January 1995. Because Marks is currently disabled, it is disputed whether Marks was willing and able to return to his post of superintendent on April 17, 1995. If Marks was set to return to his job and could perform his essential job duties, then defendant's termination of Marks' employment may constitute a violation of the ADA. The pivotal and disputed issue is whether Marks represented to Lincoln National that he was totally disabled during the period beginning on April 17, 1995, through the date of his termination on April 26, 1995. Therefore, the issue of whether Marks was able to go back to work on April 17, 1995, but suffered a relapse of his disability upon his firing on April 26, 1995, is a question most appropriately determined by a jury.

Marks provides sufficient evidence to survive a motion for summary judgment on this claim because in March 1995, three different doctors, one hired by the School Board, concluded that plaintiff could resume his job duties in April 1995. Further, Dr. Ausmus and Dr. Mignone signed FMLA "Return to Work" forms certifying that plaintiff was capable of returning to work. The fact that he

was subsequently fired and his mental difficulties returned on April 26, 1995—a very short time later—should not prejudice plaintiff's claim that he is entitled to protection under the ADA. Logically following this analysis, then, is that Marks may never have had the time or opportunity to revise his disability forms to Lincoln National. As a result, it will be left to a jury to decide if plaintiff was indeed a "qualified individual with a disability" entitled to the protection of the ADA.

### B. *Count II: The Missouri Human Rights Act*

■ Defendant also argues that plaintiff cannot maintain a prima facie case under the MHRA because Marks has continually maintained that he is incapable of performing his job as superintendent. The MHRA provides in relevant part:

> [I]t shall be an unlawful employment practice for an employer because of the … handicap of any individual … to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, condition or privileges of employment, because of such individual's … handicap.

Mo.Rev.Stat. § 213.055 (1996). Since "handicap" is defined as an impairment "which with or without reasonable accommodation does not interfere with performing the job", defendant argues that Marks is not protected under the MHRA because he certified to Lincoln National that he is incapable of performing his essential job duties. Mo.Rev.Stat. § 213.010(10).

Decisions made under the ADA have been held to be applicable and authoritative under the MHRA. *See Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir.1994). As a result, it is unnecessary for this Court to repeat the above discussion and analysis in order to deny defendant summary judgment on Count II, as well as Count I.

### C. *Count III: The Family and Medical Leave Act*

■ Defendant also requests that this Court grant summary judgment on plaintiff's FMLA claim. The FMLA states, in relevant part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for … a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (1996). The FMLA also explains that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2) (1996).

Defendant first argues that summary judgment is appropriate because Marks has continually maintained that he is incapable of performing his job as superintendent and, therefore, he could not fulfill his contractual obligations to the District. As stated above, this Court will not place estoppel effect on Marks' claim that he was capable of performing the essential functions of his job beginning on April 17, 1995.

Second, defendant asserts that it is entitled to summary judgment on the FMLA claim because the Act does not immunize employees from appropriate disciplinary actions, including termination, which result from wrongful conduct engaged in before the leave. Since the District did allow Marks to take a medical leave, the issue here is whether the District terminated Marks in retaliation for taking that leave under the FMLA.

The FMLA explains that an employer is not required to provide an employee returning from a medical leave "any right, benefit or position of employment other than the right, benefit or position to which the employee would have been entitled had the employee never taken leave." 29 U.S.C. § 2614(a)(3)(B). "An employee who contends he was terminated because he took FMLA [leave] must show his termination was motivated by discrimination based on that leave." *Day v. Excel Corp.*, 1996 WL 294341, at *13 (D.Kan. May 17, 1996).

Defendant claims that Marks was not terminated for taking a medical leave under the FMLA, but was terminated for his conduct before his leave which was seriously prejudicial to the District. As a result, defendant contends that in order for plaintiff to prevail

on a retaliation claim under the FMLA, he must present evidence that defendant would not have fired him for his wrongful conduct if he had not taken a medical leave. *Lempres v. CBS, Inc.*, 916 F.Supp. 15, 20 (D.D.C.1996). Defendant also cites to *Niemiec v. H & K, Inc.*, 1995 WL 465683 (E.D.Wis.1995), for the proposition that summary judgment is appropriate when the defendant can show that it terminated the plaintiff for legitimate, nondiscriminatory reasons, and not for taking a medical leave.

Plaintiff claims, however, that it was only after he took medical leave that the School Board began investigating him to find grounds for termination. Plaintiff argues that the School Board engaged in conduct designed to prevent plaintiff from returning to his job as superintendent, such as publicizing Marks' medical condition and making false statements to the press in order to invoke public support for his termination.

Defendant contradicts plaintiff's allegations that its School Board publicized Marks' medical condition or made false statements to the press, and claims that the media independently investigated Marks. Nonetheless, viewing the evidence in the light most favorable to plaintiff, this Court finds that several genuine issues of material fact, including the basis for the District's termination of Marks, remain in dispute. As a result, defendant has not met its burden for summary judgment, and these issues are best determined by a jury.

### D. *Count IV: Infliction of Emotional Distress*

Plaintiff admits, and this Court agrees, that summary judgment on Count IV is appropriate based on Mo.Rev.Stat. § 537.600. As a result, it is unnecessary for this Court to discuss the issues or arguments presented by defendant's brief on this issue.

### E. *Count V: Breach of Contract*

█ In Count V, Marks alleges that the District wrongfully terminated him in violation of his written contract. Defendant, in its Answer, also alleges breach of contract in a counter-claim against plaintiff. Defendant requests that this Court grant it summary

judgment on plaintiff's breach of contract claim and its own counter-claim. Defendant argues that the District could unilaterally terminate Marks for engaging in conduct "seriously prejudicial" to the District, such as neglect of duty or intentional or material breach of contract. Defendant asserts that because Marks admitted that he was not able to perform his job responsibilities, Marks himself materially breached the contract. As a result, the School Board was entitled to terminate Marks' employment with the District.

Plaintiff, however, contends that he was capable of performing the essential duties of his job beginning on April 17, 1995, and that he had communicated this to the School Board. The School Board, however, terminated his employment with the District on April 26, 1995, and this action constituted a unilateral breach of the contract.

Because the underlying reasons for the School Board's decision to terminate Marks' employment with the District are disputed, this Court finds that defendant has not met its burden. Therefore, a jury is in the best position to decide the breach of contract claim and summary judgment is inappropriate.

### IV. *Conclusion*

For the reasons discussed above, it is hereby

ORDERED that defendant the School District of Kansas City, Missouri's Motion for Summary Judgment (document #53) is granted in part and denied in part. It is further

ORDERED that the part of defendant's motion which requests summary judgment on Count IV of plaintiff's Complaint is granted. It is further

ORDERED that the part of defendant's motion which requests summary judgment on Counts I, II, III, and V of plaintiff's Complaint is denied.