**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**SOUTH DAKOTA WHEAT GROWERS ASSOCIATION, Defendant/Third Party Plaintiff,**

**v.**

**MUTUAL SERVICE LIFE INSURANCE COMPANY, Third Party Defendant.**

**Civ. No. 87–1023.**

United States District Court,
D. South Dakota, N.D.

March 11, 1988.

---

Ronald W. Taoka, E.E.O.C., Denver, Colo., for plaintiff.

Dennis Maloney and Michael T. Hogan, Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, S.D., for defendant S.D. Wheat Growers Ass'n.

David A. Gerdes, May, Adam, Gerdes & Thompson, Pierre, S.D., for third party defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

### Introduction

This action was commenced on May 29, 1987 by the plaintiff, the Equal Employment Opportunity Commission (hereafter EEOC). It alleged that the defendant, the South Dakota Wheat Growers Association (hereafter Association) discriminated on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e *et. seq.* (1982 & Supp. III 1985). Subsequently, plaintiff moved this Court for summary judgment.

### Facts

The pertinent facts of this case are not disputed. Prior to this action, Jungers was an employee of the defendant. While employed by the defendant, Jungers was covered by a health insurance policy which would pay maternity-related costs. During the period of Jungers' employment, his wife became pregnant.

Subsequently, in March of 1986, Jungers was discharged by the defendant. As required by South Dakota statutes, SDCL 58–18–7.5 and –7.6 (Supp.1987), Jungers was offered a conversion health insurance policy. This policy did not include coverage for pregnancy and childbirth-related disabilities. It did cover, however, other short-term disabilities.

### Discussion

It is uncontroverted that it is unlawful for an employer to discriminate on the basis of sex with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e–2(a)(1) (1982 & Supp. III 1985). Originally, this prohibition did not preclude discrimination based on pregnancy. This interpretation was made by the Supreme Court of the United States in *General Electric Co. v. Gilbert*, 429 U.S. 125, 145–146, 97 S.Ct. 401, 412–13, 50 L.Ed. 2d 343 (1976).

In response to the decision in *Gilbert*, Congress passed *The Pregnancy Discrimination Act of 1978*. Pub.L. No. 95–555, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k) (1982 & Supp. III 1985)). That Act included discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions, within the definition of sexual discrimination. Thus, it is now unlawful for an employer to discriminate on the basis of pregnancy, childbirth, or related medical conditions with respect to compensation, terms, conditions or privileges of employment. *See Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 462 U.S. 669, 684, 103 S.Ct. 2622, 2631, 77 L.Ed. 2d 89 (1983). This prohibition includes discrimination in health insurance coverage made pursuant to an employment relationship. "Health insurance and other fringe

benefits are 'compensation, terms, conditions, or privileges of employment.'" *Newport News Shipbuilding and Dry Dock Co.,* 462 U.S. at 681, 103 S.Ct. at 2630 (citing 42 U.S.C. § 2000e–2(a)(1)). Therefore, if a fringe benefit of employment is health insurance coverage, and the policy does not provide coverage for pregnancy-related conditions, the health insurance coverage is discriminatory on the basis of sex.

This result also follows where the employee is a male. As noted by the Supreme Court in *Newport News Shipbuilding and Dry Dock Co.:*

> [t]he Pregnancy Discrimination Act has now made clear that for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex. And since the sex of the spouse is always the opposite of the sex of the employee, it follows inexorably that discrimination against female spouses in the provision of fringe benefits is also discrimination against male employees. 462 U.S. at 684, 103 S.Ct. at 2631.

In this case, the policy provided did not cover pregnancy, childbirth or related medical conditions. Accordingly, Mrs. Jungers' pregnancy was not covered. Since the health insurance coverage did not cover the pregnancy of an employee's wife, it discriminated against him. Thus, if the Jungers are within the scope of protection of Title VII and the discriminatory insurance coverage is attributable to the defendants, the provision of a health insurance policy which did not cover his wife's pregnancy was an unlawful employment practice. Therefore, the determinative issue before this Court is whether a policy provided after termination of employment, as a consequence of such employment, is governed by Title VII.

Defendant argues Title VII should not be applied to post-employment benefits such as this health insurance policy. It contends the policy is a matter between Jungers and the insurance company. It also points out that the policy is provided pursuant to state law and is not a fringe benefit.

The plaintiff responds that the employment relationship should not be interpreted too strictly. Rather, it asserts discrimination arising out of the employment relationship is unlawful regardless of "whether or not the person discriminated against is an employee at the time of discriminatory conduct." *Pantchenko v. C.B. Dolge Co., Inc.,* 581 F.2d 1052, 1055 (2d Cir.1978). This Court agrees.

Although Jungers was not an employee of the defendant after being discharged, the post-employment insurance coverage was available because of his earlier employment status.[1] Had there not been an em-

---

1. SDCL 58–18–7.5 provides:

Every health benefit program that is self-insured, and every policy of group health insurance providing benefits for hospital or medical expenses delivered or issued for delivery in this state, by a commercial health insurance company, by a nonprofit medical and surgical service plan corporation, by a nonprofit hospital service plan corporation, by a health maintenance organization or by any other similar mechanism shall, in addition to the provisions required by law, include that employees have a right upon leaving employment or the termination of the coverage by the insurer, other than the termination of the policy or contract itself and the replacement thereof by similar coverage, to have the coverage continue for themselves and their eligible dependents for a period of three months for which the employee shall be financially responsible.

SDCL 58–18–7.6 provides:

Each such plan of benefits, contract or policy shall also provide an employee with the right, upon leaving employment or the termination of coverage under the group by the insurer, other than the termination of coverage and replacement thereof by similar coverage, to an individual conversion policy or contract without additional underwriting restrictions. The conversion policy shall consist of a plan of individual coverage that closely approximates the coverage provided under the group, and shall be renewable at the option of the insured. The conversion policy may provide that as of any premium due date the insurer may refuse to renew the policy or coverage of any insured person for only the following reasons:

(1) Either similar benefits for which such person is covered, together with the converted policy's benefits, would result in overinsurance according to the insurer's standards for overinsurance;

ployment relationship, there would not have been a fringe benefit such as post-employment insurance. Thus, when the insurance coverage discriminated against Jungers while providing benefits only available as a result of his employment, such discrimination resulted directly from the employment relationship. Therefore, even though Jungers had been discharged, the conversion policy was offered as a result of his employee status, and any discrimination resulting from the policy is an unlawful employment practice.

Defendant's contention that the policy is a matter between Jungers and the insurance company is not persuasive. For support, the defendant quotes Justice Marshall's assertion in *Arizona Governing Committee v. Norris* that "[t]itle VII 'primarily govern[s] relations between employees and their employers, not between employees and third parties,'" 463 U.S. 1073, 1086, 103 S.Ct. 3492, 3500, 77 L.Ed.2d 1236 (1983), (citing *City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702, 718, 98 S.Ct. 1370, 1380, 55 L.Ed.2d 657 (1978)). This is not, however, a rule without qualification.

As Justice Marshall noted on this point, 42 U.S.C. § 2000e(b) (1982 & Supp. III 1985) makes the statute applicable to both "employers and 'any agent' of an employer." *Norris*, 463 U.S. at 1086 n. 16, 103 S.Ct. at 3500 n. 16. Accordingly, an employer's responsibility is not limited to its own actions, but extends to those who act for it. More importantly, however, as Justice Marshall eventually ruled in *Norris*:

> [s]ince employers are ultimately responsible for the 'compensation, terms, conditions, [and] privileges of employment' provided to employees, an employer that adopts a fringe benefit scheme that discriminates among its employees on the basis of race, religion, sex, or national origin violates Title VII regardless of whether third parties are also involved in the discrimination. 463 U.S. at 1089, 103 S.Ct. at 3502.

(2) Fraud or material misrepresentation in applying for any benefits under the converted policy; or

Therefore, an employer who offers benefits to an employee is responsible if the benefits discriminate because of sex.

Accordingly, this court concludes the undisputed facts establish a violation by the defendant of Title VII. Thus, summary judgment will be granted in favor of the plaintiff on the question of whether there was a violation of Title VII. This Court does not pass on the appropriate relief available to the plaintiff.

(3) Other reasons which may be approved by the director of the division of insurance.